IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**MICHAEL CURTIS,**

    **Plaintiff,**

v.                                 Case No. 2:12-cv-07885

**SERGEANT SHAWN RAMSEY,
OFFICER CAVENDISH,
OFFICER RICHARD WILLIAMS,
OFFICER JASON BRAGG, and
OFFICER FARLEY,**

    **Defendants.**

### PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable John T. Copenhaver Jr., United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court is the plaintiff's Motion for Default Judgment (ECF No. 40), the defendants' Motion to Set Aside Entry of Default (ECF No. 50), as well as a Motion for Temporary Restraining Order or Preliminary Injunction (ECF No. 45-2 and 45-3) and a second Motion for Preliminary Injunction (ECF No. 46-2) filed by the plaintiff.

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the defendants' Motion to Set Aside Entry of Default (ECF No. 50), **DENY** the plaintiff's Motion for Default Judgment (ECF No. 40), **DENY** the plaintiff's Motions for Temporary Restraining Order or Preliminary Injunction (ECF

Nos. 45-2, 45-3 and 46-2), and **DISMISS** this civil action pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B).

## PROCEDURAL HISTORY

On November 16, 2012, the plaintiff, who was then incarcerated at the Mount Olive Correctional Complex ("MOCC")[1] filed a Complaint alleging that, on August 22, 2012, he was assaulted by a John Doe correctional officer, believed to be "Officer Hilawhit,"[2] after the plaintiff had asked to be placed in protective custody during an administrative segregation hearing. (ECF No. 1 at 4). The plaintiff's initial Complaint also alleged that defendant John Doe/Hilewitz had disclosed to other inmates that the plaintiff was a "baby raper" and a "rat," which the plaintiff claims has caused him to receive threats from John Doe/Hilewitz and other prisoners, and allegedly placed his life in danger. (*Id.* at 5). The initial Complaint requested the termination of defendant John Doe/Hilewitz's employment and the permanent placement of the plaintiff in single-cell, protective custody. (*Id.* at 5-6).

On September 10, 2013, the plaintiff filed additional documentation which raised new allegations concerning retaliatory conduct by other correctional officers at MOCC. The documentation addresses an alleged assault of the plaintiff in his cell, on or about August 22, 2013, by a Sgt. Ramsey, and further alleges that the plaintiff was "maced" in his cell for asking for a drinking cup. (ECF No. 8 at 1).

During a status conference held on September 24, 2013, the plaintiff clarified that the "mace" incident occurred in or around July of 2013, and that the assault by Sgt.

---

[1] According to the current docket sheet, the plaintiff is now incarcerated at the Huttonsville Correctional Center, which is located within the jurisdiction of the United States District Court for the Northern District of West Virginia.

[2] It is believed that the proper identity of this defendant is "Jeff Hilewitz."

2

Ramsey occurred on or about August 22, 2013. The plaintiff further clarified that, on or about August 27, 2013, he was seen in the medical department for a chest x-ray, and that the staff noted bruising on his right front side, and videoed the injuries allegedly received from the August 22nd assault. The plaintiff further stated that an institutional investigator spoke with him about the incident, but apparently told the plaintiff he did not believe his story. The plaintiff further stated that he is a "transsexual" or "transgender" individual, and that his psychological status had been announced in front of other inmates, allegedly placing his life in danger. The plaintiff clarified that he had been in the segregation unit since his arrival at MOCC in August of 2012. At the conclusion of the status conference, the plaintiff was given leave to file an Amended Complaint. (ECF Nos. 11, 12).

On October 18, 2013, the plaintiff filed an Amended Complaint (ECF No. 13), which largely repeated the allegations made against defendant Hilewitz in the initial Complaint, and further alleged that the plaintiff suffers from "gender dysphoria," aka "transsexualism." (ECF No. 13 at 1-2). The Amended Complaint further alleged that, as a result of the actions of defendant Hilewitz (who had since left employment at MOCC), the prison population and staff learned of the plaintiff's gender dysphoria and the plaintiff had been subjected to various incidents of retaliation, including an "assault and battery" by Correctional Officer Shawn Ramsey[3] on August 22, 2013, being pepper sprayed for asking for a drinking cup, other "hate crimes" by staff members, being disciplined for false rules violations, and having other inmates throw urine and feces into the plaintiff's cell. (*Id.* at 2-3). The plaintiff's Amended Complaint further alleged

---

[3] A clerical error resulted in this defendant initially being listed on the docket sheet as "Sharon Ramsey."

that he had been denied treatment by a "gender specialist." The plaintiff alleges that this conduct constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. (*Id.* at 3). The Amended Complaint requested the plaintiff's permanent placement in protective custody or in a mental health facility. (*Id.* at 4).

On January 23, 2014, before the court had ordered service of process, the plaintiff filed a Second Amended Complaint (ECF No. 19). The Second Amended Complaint named Sergeant Jeffrey Hilowitz [sic; Hilewitz], Sergeant Shawn Ramsey, Captain Russell Matheney, Warden David Ballard and Commissioner Jim Rubenstein as defendants. The Second Amended Complaint repeated the plaintiff's allegations that the plaintiff had received false write-ups for rules violations, that he was allegedly assaulted by defendant Shawn Ramsey in August of 2013, and that he was generally subjected to retaliation as a result of his transsexualism and defendant Hilewitz's assertions that he was a "baby raper" and a "rat." (*Id.* at 2).

The undersigned conducted another status conference in this matter on June 3, 2014. (ECF No. 26). During the status conference, the plaintiff identified Shawn Ramsey, Officer Cavendish, Officer Richard Williams, Officer Jason Bragg and Officer Farley as the MOCC staff members who had engaged in conduct that had allegedly violated the plaintiff's constitutional rights. (ECF No. 26). The plaintiff further agreed to voluntarily withdraw the Second Amended Complaint and dismiss Captain Russell Matheny, Warden David Ballard, and Commissioner Jim Rubenstein, who were named in the style of the Second Amended Complaint, but against whom no specific allegations were made therein. The plaintiff also agreed to voluntarily dismiss defendant Jeffrey

Hilewitz, as the plaintiff is seeking only injunctive relief, and Mr. Hilewitz is no longer employed at MOCC or the West Virginia Division of Corrections.

Thus, on June 5, 2014, the undersigned ordered that this matter shall proceed on the Amended Complaint (ECF No. 13) filed on October 18, 2014. (ECF No. 27). The undersigned further granted the plaintiff's Applications to Proceed Without Prepayment of Fees and Costs (ECF Nos. 5 and 22), and ordered that service of the Amended Complaint be made upon defendants Shawn Ramsey, Officer Cavendish, Officer Richard Williams, Officer Jason Bragg and Officer Farley by certified mail, return receipt requested. (*Id.*) Summonses for these defendants were issued on June 6, 2014. (ECF No. 28).

On June 17, 2014, the return receipts were docketed indicating that each of these named defendants had signed for their respective copies of the Summons and Amended Complaint. (ECF Nos. 29-33). Accordingly, Answers or other responses to the Amended Complaint on behalf of each defendant were due on June 30, 2014. (*Id.*) No timely Answers or other responses were filed by any of these defendants.

Thus, four months later, on October 31, 2014, the Clerk of Court was directed by the undersigned to enter default against each of the named defendants, and to serve a notice of the entry of default upon each of the defendants by certified mail, return receipt requested. (ECF No. 37, 38). Return receipts docketed on November 18, 2014, indicate that defendants Ramsey, Cavendish, Williams and Bragg each signed for receipt of the notice of entry of default. (ECF Nos. 41-44). Officer Farley's certified mail was returned as undeliverable because there are multiple Officer Farleys and no first name was provided. (ECF No. 39).

On November 12, 2014, the plaintiff filed the pending Motion for Default Judgment (ECF No. 40), claiming that the defendants had failed or refused to respond and defend against the allegations in the Amended Complaint. The plaintiff's Motion asserts that the plaintiff be granted declaratory and injunctive relief and, for the first time since this matter was initiated, also sought monetary damages (such relief was not specifically sought in the Amended Complaint).

On April 16, 2015, the plaintiff filed a letter-form motion which was construed to contain a Motion for Appointment of Counsel (ECF No. 45-1) (which will be separately addressed, along with a second such motion docketed in ECF No. 49), a Motion for Temporary Restraining Order (ECF No. 45-2) and a Motion for a Preliminary Injunction (ECF No. 45-3). On May 4, 2015, the plaintiff filed a letter-form motion requesting a docket sheet. (ECF No. 46-1). The same letter-form motion was also construed to contain a Motion for Preliminary Injunction (ECF No. 46-2) and a Motion for a Status Conference (ECF No. 46-3).[4]

On May 18, 2015, the plaintiff filed a letter-form Notice of Change of Address (ECF No. 47), indicating that he had been transferred to the Huttonsville Correctional Center ("HCC") on May 11, 2015.

On June 23, 2015, the defendants, by counsel, William Murray, and the law firm of Anspach Meeks Ellenberger LLP, filed a Motion to Set Aside Entry of Default (ECF No. 50) and a Memorandum of Law in support thereof (ECF No. 51). The Memorandum

---

[4] The undersigned notes that the plaintiff has filed a separate civil action, Case No. 14-cv-24624, concerning a use of force against the plaintiff on April 11, 2014. The plaintiff's most recent filings reference both civil action numbers. Accordingly, it has been somewhat difficult for the court to determine which motions are directed to which case.

of Law asserts that the default entered against all of the defendants should be set aside and that default judgment is not warranted. The Memorandum specifically asserts:

> The Plaintiff's Motion for Default Judgment now seeks various forms of relief not originally requested or contained in the Amended Complaint, to include, but not limited to, compensatory damages in the amount of Fifty Thousand dollars ($50,000) and punitive damages in the amount of Fifty Thousand dollars ($50,000). As discussed below, the Entry of Default should be set aside because the Defendants are able to meet the standard of good cause as defined by the U.S. Fourth Circuit Court of Appeals and required by Fed. R. Civ. P. 55(c). Accordingly, Defendants are entitled to a trial on the merits in order to give them a chance to refute Plaintiff's newly requested and exaggerated claims for relief.

(ECF No. 51 at 2). The plaintiff has not filed a Reply brief concerning the Motion for Default Judgment. This matter is ripe for adjudication.

## ANALYSIS

### A. The plaintiff's Motion for Default Judgment and the defendant's Motion to Set Aside Entry of Default.

Rule 55(a) requires that default be entered by the Clerk when "a party against whom a judgment for affirmative relief is sought" has "failed to plead or otherwise defend and that failure is shown by affidavit or otherwise . . . ." Fed. R. Civ. P. 55(a). Furthermore, "Rule [55(b)] of the Federal Rules of Civil Procedure authorizes the entry of a default judgment when a defendant fails 'to plead or otherwise defend' in accordance with the Rules." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982); *see also* Fed. R. Civ. P. 55(b).

As noted by the defendants in their Memorandum:

> An Entry of Default pursuant to Fed. R. Civ. P. 55(b)(1) [sic; 55(a)] does not guarantee a Default Judgment, as they are two separate concepts." *See, e.g. Wainright's Vacations, LLC v. Pan Am,* 130 F. Supp. 2d 712, 717 (D. Md. 2001); *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999). Thus, in the absence of a Rule 60(b) judgment, this Motion to Set Aside Entry of Default is properly made pursuant to

> Rule 55(c), which espouses "good cause" as its standard. *Wainright's Vacations,* 130 F. Supp. 2d at 717; Fed. R. Civ. P. 55(c).
>
> Furthermore, "an extensive line of decisions has held that Rule 55(c) must be liberally construed in order to provide relief from the onerous consequences of defaults and default judgments." *Wainright's Vacations*, 130 F. Supp. 2d at 717 (quoting *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 954 (4th Cir. 1987) (internal quotations omitted). This rule is constructed liberally in order to ensure cases are decided on the merits; therefore, "[a]ny doubt should be resolved in favor of any application to set aside the judgment to the end of securing a trial upon the merits." *Huntington Cab Co. v. American Fidelity & Casualty Co.*, 4 F.R.D. 496, 498 (D. W. Va. 1945).

(ECF No. 51 at 2-3). Thus, default judgments are not favored.

The defendants' Memorandum further notes that the United States Court of Appeals for the Fourth Circuit has established a six-factor analysis to determine whether good cause exists to set aside an entry of default. (*Id.* at 3). Those six factors consist of the following:

> (1) whether the defaulting party has a meritorious defense; (2) whether the defaulting party acts with reasonable promptness; (3) the personal responsibility of the defaulting party; (4) the prejudice to the non-defaulting party; (5) whether there is a history of dilatory action; and (6) the availability of sanctions less drastic.

*See U.S. v. Morandi,* 673 F.2d 725, 728 (4th Cir. 1982). (ECF No. 51 at 3). The defendants assert that the reasonable promptness and meritorious defense factors hold the most weight and that, generally, the entry of default should be set aside when those factors, alone, are met. *Consolidated Masonry & Fireproofing, Inc. v. Wagman Construction Corp.*, 383 F.2d 249, 251 (4th Cir. 1967). (*Id.*)

The defendants contend that they have a meritorious defense to the plaintiff's claims. (*Id.* at 3-4). The defendants further assert that the plaintiff has suffered no prejudice as a result of their failure to defend this action, because the plaintiff continues

8

to be housed in segregation at HCC, which is the relief he originally sought. (*Id.* at 4). The defendants further assert that they do not have a history of dilatory action in this or other matters, and that less severe sanctions are available, should the court deem the same necessary. (*Id.*) Therefore, the defendants assert that there is good cause to set aside the default entered by the Clerk on October 31, 2014.

Upon consideration of the *Morandi* factors discussed above, the undersigned proposes that the presiding District Judge **FIND** that the defendants can establish good cause to set aside the entry of default against them. The plaintiff's Amended Complain sought only injunctive relief in the form of the plaintiff's placement in protective custody or in a mental health facility. At present, the plaintiff is being held in segregated confinement at HCC. Thus, he has essentially received the relief he was seeking when he filed his Amended Complaint.

### B. The plaintiff's requests for declaratory and injunctive relief are now moot.

In light of the plaintiff's transfer from MOCC to HCC, his requests for any declaratory or injunctive relief are now moot. The power of the federal courts to adjudicate claims turns on the existence of a case or controversy. U.S. Const., art. III, § 2; *Daimler-Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). "When a case or controversy ceases to exist because the issue is no longer live or a party 'lack[s] a legally cognizable interest in the outcome[,]' preventing the court from granting effective relief, the claim becomes moot, and the court lacks the constitutional authority to adjudicate the issue." *Taylor v. Riverside Regional Jail Authority*, 2011 WL 6024499 *4 (E.D. Va., Dec. 2, 2011) (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969) and *North

*Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

As noted in *Taylor*, well-established Fourth Circuit precedent has recognized that "the transfer or release of an inmate from the facility where he suffered the challenged conditions 'moots his claims for injunctive and declaratory relief' pertaining to his imprisonment." 2011 WL 6024499 at *4; *see also Rendellman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there.") For these reasons, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's requests for declaratory and injunctive are moot, and must be dismissed, and the related motions for preliminary injunctive relief (ECF Nos. 45-2, 45-3 and 46-2) should be denied.

The plaintiff's present place of confinement is located outside the jurisdiction of this court. Rather, the proper court with jurisdiction over the plaintiff's current custodian is the United States District Court for the Northern District of West Virginia. Accordingly, any future requests for declaratory or injunctive relief concerning the plaintiff's conditions of confinement must be addressed to that court in a separate civil action.

### C. Dismissal of this civil action is warranted under 28 U.S.C. §§ 1915A and 1915(e)(2)(B).

Pursuant to the provisions of 28 U.S.C. § 1915A, the court must dismiss the case if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. A

similar screening is required of complaints filed by persons proceeding *in forma pauperis* under 28 U.S.C. § 1915(e)(2)(B).

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints. However, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556.
> * * *
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

Now that the plaintiff's requests for declaratory and injunctive relief are moot, and in light of the fact that the plaintiff did not seek monetary damages in his Amended Complaint, there is no available relief as requested by the plaintiff in the Amended Complaint.[5]  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Amended Complaint fails to state a claim upon which relief may be granted, and should be dismissed under the provisions of 28 U.S.C. § 1915A and 1915(e)(2)(B).

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the defendants' Motion to Set Aside Entry of Default (ECF No. 50), **DENY** the plaintiff's Motion for Default Judgment (ECF No. 40), **DENY** the plaintiff's Motions for Temporary Restraining Order or Preliminary Injunction (ECF Nos. 45-2, 45-3 and 46-2), and **DISMISS** this civil action pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed

---

[5] Although the plaintiff's Motion for Default Judgment (ECF No. 40) sought monetary damages, the court does not construe the request therein to be a proper motion to amend the Amended Complaint.

Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties (or their counsel where applicable) and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

July 8, 2015

Dwane L. Tinsley
United States Magistrate Judge